**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN F. RUSSO, JR., : | |
| : | Civ. Action No. 17-2762 (FLW) |
| Plaintiff, : | |
| : | |
| v. : | **OPINION** |
| : | |
| STATE OF NEW JERSEY, *et al.*, : | |
| : | |
| Defendants. : | |

**WOLFSON, District Judge:**

Plaintiff John F. Russo, Jr. ("Plaintiff"), a New Jersey Superior Court Judge, files this suit against defendants State of New Jersey, Administrative Office of the Courts, Hon. Marlene Lynch Ford, A.J.S.C. ("Judge Ford"), Hon. Madeline F. Einbinder, P.J.S.C. ("Judge Einbinder"), Hon. Wendell E. Daniels, P.J.S.C. ("Judge Daniels")(collectively, "Defendants"), alleging discrimination based on his association with a disabled person; Plaintiff claims that Defendants engaged in a pattern of discriminatory conduct for the purposes of forcing Plaintiff to resign from his judeship, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the New Jersey Law Against Discrimination ("NJLAD"). In the instant matter, Defendants move to dismiss Counts Three and Four of the Second Amended Complaint (the "Complaint"), and they move to strike certain portions of the Complaint. For the reasons set forth below, Defendants' motion to

1

dismiss Counts Three and Four is **GRANTED**, as well as their motion to strike.


## BACKGROUND

For the purposes of this motion, the relevant facts are taken from the Complaint and assumed as true. In December 2015, Plaintiff was appointed as a Superior Court Judge in New Jersey state court, and assigned to the Family Division. Compl., ¶¶ 11-12. Plaintiff has one adult child, J.R., over whom Plaintiff has legal and residential custody. According to Plaintiff, J.R. has multiple disabilities, including Down syndrome, Apraxia of speech and certain emotional related issues. *Id.* at ¶ 14. In August 2016, Plaintiff initiated a guardianship matter with the Superior Court of New Jersey under R. 4:86-10 to obtain a court order that J.R. was in need of a guardian due to his disabilities; because Plaintiff is a sitting judge in Ocean County, the matter was heard in Burlington County. *Id.* at ¶ 15. In March 2017, the state court issued an order appointing Plaintiff and Plaintiff's "current wife" as J.R.'s legal guardians. *Id.* at ¶ 18.

Shortly after Plaintiff's appointment to the bench, Plaintiff met with his supervisor, Judge Ford, the Assignment Judge for the Superior Court of Ocean County. *Id.* at ¶ 7. Plaintiff alleges that during the meeting, Plaintiff informed Judge Ford about J.R.'s disabilities, to which Judge Ford allegedly responded that "maybe

this job is not for you." *Id.* at ¶ 23. According to Plaintiff, over all, the "tone of the meeting was harsh and judgmental." *Id.* Thereafter, Plaintiff accuses Judge Ford and Judge Einbinder, the Presiding Judge of the Family Division in Ocean County, of discriminating against Plaintiff in an effort to force Plaintiff to resign. Plaintiff claims that the acts of discrimination were based on his association with J.R., a person with disabilities. *Id.* at ¶¶ 23-24.

As examples of the alleged unlawful and discriminatory conduct, Plaintiff avers that since inception of his judgeship, he was only given minimal formal training before being assigned his cases, and Plaintiff was allegedly not provided a mentor. *Id.* at ¶ 25. Plaintiff also alleges that Judge Ford denied Plaintiff's request for intermittent family leave to care for J.R., and she also denied Plaintiff's request to transfer out of the Family Division, which request Plaintiff made in light of the perception that Plaintiff would not be objective in the future due to his guardianship matter pending in Ocean County. *Id.* at ¶ 26. Plaintiff claims that when another judge had cancer, that judge was promptly transferred out of the Family Division due to fear that the Division was emotionally taxing. *Id.*

In addition, Plaintiff alleges that Judge Einbinder also subjected Plaintiff to discriminatory conduct based on his association with his disabled son. Plaintiff claims that Judge

Einbinder falsely informed others that Plaintiff was having performance difficulties on the bench, when in fact, Plaintiff was performing his job satisfactorily. *Id.* at ¶ 27. Plaintiff further claims that Judge Einbinder criticized Plaintiff for reprimanding an attorney who had entered Plaintiff's private chambers without permission or authorization, in an effort to intimidate Plaintiff. *Id.* Finally, Plaintiff alleges that because Judge Einbinder resented Plaintiff for taking time off to care for J.R., Judge Einbinder assigned Plaintiff the largest and most complex case load, and Plaintiff was ordered to do emergent phone duties, 24 hours a day, during the 2016 Christmas recess, all of which actions were allegedly designed to force Plaintiff to resign. *Id.*

Plaintiff alleges that in April 2017, Judge Ford sent a letter to Plaintiff suspending Plaintiff from his judicial duties. In that letter, according to Plaintiff, Judge Ford also requested that Plaintiff submit to a fitness-for-duty evaluation as a precondition to continuing to hear any cases. *Id.* at ¶ 29. Plaintiff claims that the letter failed to specify what the alleged problems were or the requisite factual basis that would warrant a psychological evaluation. In that regard, in the Complaint, Plaintiff states that the only ostensible reason for suspending Plaintiff was that a law clerk had complained about Plaintiff creating a hostile work environment; however, Plaintiff accuses

Defendants of using an unverified assertion from a law clerk as a pretext to discriminate against Plaintiff. *Id.* at ¶ 33.

In April 2017, Plaintiff instituted this action against Defendants. Plaintiff filed his Second Amended Complaint in June 2017.[1] In that Complaint, in addition to naming Judges Ford and Einbinder, Plaintiff also names Judge Daniels as a defendant. Plaintiff alleges that since he filed the Complaint in this action, these three judges retaliated against him. Specifically, Plaintiff alleges that Judge Daniel became Plaintiff's acting Assignment judge in light of the lawsuit filed against Judges Ford and Einbinder, and that Judge Daniels had advised Plaintiff that because Plaintiff filed the Complaint in this action, Plaintiff would not be permitted to attend any "official events or functions" in Plaintiff's capacity as a judge. *Id.* at ¶ 35.

In May 2017, counsel for Defendants informed Plaintiff that he would be placed on paid administrative leave, indefinitely, effective immediately. *Id.* at ¶ 36. Plaintiff consented to the leave. *Id.* Plaintiff alleges that since the filing of the lawsuit, however, Defendants have changed their original reason for suspending Plaintiff from hearing any cases. In that regard, Plaintiff asserts that Plaintiff's psychiatric fitness for duty

---

[1] While Defendants consented to the filing of Plaintiff's Second Amended Complaint, they reserved the right to strike or to move for dismissal, in whole or in part, that Complaint. *See* Order dated June 8, 2017.

examination was no longer required, but Plaintiff has not been provided any details as to any other investigation regarding the reasons for his suspension. *Id.* at ¶ 37. Plaintiff complains that this clear violation of due process was done to retaliate against him for filing this lawsuit. *Id.* Additionally, Plaintiff avers that he has been directed not to enter his Chambers while on administrative leave, and that only Plaintiff's staff may collect his personal belongings. *Id.* at ¶ 44.

Based on the foregoing allegations, Plaintiff brings this action asserting four causes of action. In Count One, Plaintiff alleges that the State and the Administrative Office of the Courts discriminated against him because of Plaintiff's association with a person with disabilities, in violation of Section 504 of the Rehabilitation Act. In Count Two, Plaintiff sues Judges Ford, Einbinder, and Daniels, in their individual capacities, for violating NJLAD by discriminating against Plaintiff based on Plaintiff's association with an individual with a disability. In Count Three, Plaintiff alleges that each of the name defendant-judges, in their individual and official capacities, retaliated against Plaintiff for filing this lawsuit, in violation of Plaintiff's First Amendment rights. In Count Four, Plaintiff brings a parallel state claim pursuant to the New Jersey Civil Rights Act ("NJCRA").

In the instant matter, Defendants move to dismiss Counts Three and Four of the Complaint for failure to state claim on the basis that, as a public employee, Plaintiff's personal employment issues are not a matter of public concern such that Plaintiff can bring a First Amendment claim in this context. Defendants also move to strike portions of the Complaint, i.e., paragraphs 10 and 36 through 45, and to strike Counts Three and Four, on the basis that those specific averments and Counts should have been pleaded in a supplemental complaint pursuant to Fed. R. Civ. P. 15(d), as they arose from circumstances that occurred after the filing of the original complaint.

## DISCUSSION

### I.  Motion to Dismiss

#### A.  Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). Under such a standard, the

factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal quotations and citations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely

has to state a plausible claim for relief." (citation and internal quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequ ential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations, quotations and brackets omitted).

**B.   First Amendment**

Counts Three of Plaintiff's Complaint asserts a violation of the First Amendment's Petition Clause pursuant to § 1983. Similarly, Count Four asserts a violation of the New Jersey Petition Clause pursuant to the NJCRA. Defendants seek to dismiss these claims on the basis that Plaintiff has failed to allege any fact that his lawsuit touches on a matter of public concern, a

requisite element to sustain a § 1983 or NJCRA claim under the state and federal Petition Clauses.[2]

"A public employee may bring a retaliation claim pursuant to 42 U.S.C. § 1983 if his public employer retaliated against him for exercising his constitutional rights." *Morgan v. Covington Twp.*, 563 Fed. Appx. 896 (3d Cir. 2014) (citing *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2494 (2011)). "Among other rights essential to freedom, the First Amendment protects 'the right of the people . . . to petition the Government for a redress of grievances (the 'Petition Clause').'" *Id.* at 2491 (quoting U.S. Const., Amdt. 1). "The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters of constitutional litigation in the federal courts." *Id.* at 2501. "[W]hether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], as revealed by the whole record.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Importantly, "[i]f a public employee petitions as an employee on a matter of purely

---

[2]    Because the NJCRA serves as an analog of § 1983, the New Jersey Supreme Court has held that existing § 1983 jurisprudence applies to NJCRA claims. *See Perez v. Zagami*, 218 N.J. 202, 215 (2014).   I will, therefore, analyze Counts Three and Four in tandem.

private concern, the employee's First Amendment interest must give way, as it does in speech cases." *Id.* at 2500. In other words, "[w]hile the Petition Clause protects a public employee's use of the courts, a First Amendment retaliation claim under the Petition Clause will not succeed unless the employee used the courts to address matters of public concern." *Morgan*, 563 Fed. Appx. at 896.

A claim in the context of public employment under the Petition Clause need not include "indications that there is a systemic problem interfering with the public agency's performance of its governmental functions" in order to address a matter of public concern. *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 980 (3d Cir. 1997) (*en banc*). Put differently, a plaintiff need not allege that governmental agency's actions reflected systemic problems causing interference with performance of that agency, or that the actions reflected repeated or pervasive abuses of authority. *See id.* But, mere allegations of retaliation arising out of the circumstances of the plaintiff's individual employment dispute is not sufficient to meet the public concern test. *See Feldman v. Philadelphia Housing Auth.*, 43 F.3d 823, 829 (3d Cir. 1994) ("Thus, in order to determine whether [the] speech [or petition] was protected, we must first determine if [it] related to matters of public concern, or constituted merely personal grievances . . . ."). Ultimately, "[a] public employee's speech involves a matter of public concern

if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (citation omitted).

To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action. *Dougherty v. School Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014) (citation omitted). If both elements are met, the burden then shifts to the employer to establish that the same action would have been taken even if the speech had not occurred. *Id.*

The critical question, here, is whether Plaintiff engaged in activity protected by the First Amendment, which is "a question of law." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (internal quotation marks and citation omitted). If the Court determines that Plaintiff did not engage in activity protected by the First Amendment, the Court "need not address the other aspects of the First Amendment retaliation inquiry." *Burne v. Siderowicz*, 445 Fed. Appx. 529, 533 (3d Cir. 2011). Indeed, the crux of Defendants' argument centers on whether Plaintiff's allegations of retaliation touch upon a matter of public concern such that Plaintiff may sustain a claim under the Petition Clause. I answer that question in the negative.

Plaintiff alleges that he was retaliated against by Defendants for filing this lawsuit, which alleges that Defendants have taken certain actions against Plaintiff based on his association with his disabled son. Each of the alleged illegal conduct brought to light by the Complaint was purely personal in nature. Indeed, Plaintiff complains that he was only given minimal training as a new judge, was denied a request for leave to care to for his son, was subject to false criticisms, and was wrongfully suspended, all because of his association with a disabled person. After the filing of this case, Plaintiff alleges that Defendants began a campaign of retaliatory conduct to punish Plaintiff for exercising his constitutional right to petition this Court for redress. Without commenting on the merits of the allegations and taking the pleadings as true, Plaintiff has failed to plead any facts that the allegations he has asserted in his Complaint, involve any public matter that would entitle him to constitutional protection.

Plaintiff's arguments to the contrary are not persuasive. First, he argues that a public employee who petitions the court by filing a complaint against his employer/supervisor is speaking, necessarily, as a citizen, not as an employee. This contention is easily disposed of. By extending Plaintiff's position to its logical conclusion would lead to the absurd result that every employee's claim filed in court under the Petition Clause would be

a public concern simply because a lawsuit was filed. Clearly, that is not the proper inquiry under the First Amendment jurisprudence. Indeed, if a public employee, such as Plaintiff, petitions the court as an employee on a matter of purely private concern, that "employee's First Amendment interest must give way[.]" *Borough of Duryea*, 131 S. Ct. at 2500. To make that determination, I must engage in a case-by-case, reasoned analysis regarding the content, form, and context of the Complaint, as revealed by the whole record. *See Connick*, 461 U.S. at 157.

With that principle in mind, I also do not find persuasive Plaintiff's argument that because his Complaint exposes discrimination, it touches upon a public matter. On this point, Plaintiff cites case law that discusses the general concept that matters involving civil rights, particularly discrimination, are inherently a public concern, and that public employees who bring to light useful information regarding discrimination may facilitate the informed public participation in a democratic society. *See Borough of Duryea*, 564 U.S. at 397-98. While Plaintiff is correct that complaints about discrimination may amount to matters of public concern, in order to come to such a conclusion, the Supreme Court has been clear: Plaintiff's complaints must not be related to a purely private matter. In other words, even in a public employment setting, discrimination involving merely a private employee/employer dispute cannot be

construed as a public matter. *See Borough of Duryea*, 131 S. Ct. at 2500.

Next, Plaintiff argues that he seeks to enforce civil rights laws not merely against the government, but against the very individuals empowered by the state to enforce those same constitutional rights for all citizens of the state. And, Plaintiff maintains that because the allegations of discrimination and retaliation brought to light in his Complaint were committed by those officials, he has raised political and social concerns important to the public at large. I disagree.

Of course, information revealed by a plaintiff "that is necessary or appropriate to enable citizens to make informed decisions about the operation of their government is of public concern." *Pool v. VanRheen*, 297 F.3d 899, 906 (9th Cir. 2002). But, "speech by public employees addressing individual personnel disputes and grievances is not." *Id.* It is quite clear that "the quintessential employee beef" is not a public concern. *Murray v. Gardner*, 741 F.2d 434, 438 (D.C. Cir. 1984). Indeed, Plaintiff's Complaint details his personal gripes against his supervising judges, and his assumption as to why certain actions were taken against him as a judge. Nowhere in the Complaint does Plaintiff bring to light any conduct of discrimination that is systemic or prevalent in the state's judiciary system; nor did Plaintiff allege that the type of discrimination he experienced was pervasive or

that any other employees have experienced the same. More importantly, Plaintiff has not alleged, or even suggested, that Defendants were committing the alleged discriminatory conduct towards any litigant, the public or other judges. Rather, Plaintiff alleges discrete acts that were directed solely towards him.

Plaintiff relies primarily on the Third Circuit's decision in *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968 (3d Cir. 1997), to support his position. I find Plaintiff's reliance misplaced. In *Azzaro*, the Third Circuit addressed the question of whether a public employee's speech regarding sexual harassment can constitute protected speech. There, the plaintiff, a former Allegheny County employee, was fired after reporting that she was sexually harassed by an assistant to the County Commissioner. *Id.* at 970. The plaintiff subsequently sued the county and two county employees, alleging, *inter alia*, retaliation for speech protected by the First Amendment, in violation of § 1983. *Id.* at 975. Applying the analytical framework laid out by the Supreme Court in *Connick*, the court noted that the key to the "public concern" inquiry is "whether expression of the kind at issue is of value to the process of self-governance." *Id.* at 977. The court explained that "the issue is whether it is important to the process of self-governance that communications on this topic, in this form and in this context, take place." *Id.* Applying such reasoning, the Third

Circuit held that gender discrimination, "when practiced by those exercising authority in the name of a public official, is as much a matter of public concern as racial discrimination practiced under similar circumstances." *Id.* at 978. However, not "all public employee complaints about sexual harassment are matters of public concern," and examination of "all of the surrounding circumstances" is required when making such a determination. *Id.* at 980. An important circumstance that weighed heavily by the Third Circuit in favor of finding that the communication in *Azzaro* involved a matter of public concern was that the alleged harassment "brought to light actual wrongdoing on the part of one exercising public authority that would be relevant to the *electorate's* evaluation of the performance of the office of an elected official." *Id.* at 978 (emphasis added).

Here, in contrast, the alleged discriminatory conduct complained-of by Plaintiff is purely a personal matter that solely implicates Plaintiff's own position as a judge. While superior court judges are public officials, they are not elected by the public. Thus, the concern raised in *Azzaro* is not present in this case. More to the point, nothing brought to light by Plaintiff in this case would have any impact on the electorate's evaluation of the defendant-judges. Thus, I do not find *Azzaro* compels a different conclusion. See *Zelinski v. Pennsylvania State Police*, 108 F. App'x 700, 707-08 (3d Cir. 2004)(holding that a police

officer's complaints of isolated instances of sexual harassment by another officer were not related to matters of public concern, because neither the officer who committed the harassment nor the supervisor that allegedly condoned it "work[ed] directly under any elected official, and their actions d[id] not appear relevant to the electorate's evaluation of the performance of the office of any elected official."); *Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008)("retaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern.").[3]

More recently, in *Montone v. City of Jersey City*, 709 F.3d 181, 193-95 (3d Cir. 2013), the Third Circuit held that a police officer's speech alleging sexual harassment by a superior against

---

[3]  Although not raised by Plaintiff, one could argue that it would be in the public's interest to know about acts of discrimination committed by its judges.  However, I have not found any Third Circuit case law that draws a distinction based on the particular position held by the public employer/supervisor, outside of the limited exception for supervisors who are in an elected position. *See*, *supra*.  Here, because the alleged discriminatory acts were committed by state court judges, who do not hold elected office, that exception is not implicated.  Hence, under this Circuit's jurisprudence, the status of the individual defendants as judges, standing alone, cannot elevate Plaintiff's purely private matter to one of public concern.  I further note that Plaintiff has not cited, and I have not found, a single case, in or out of circuit, where a lawsuit has been brought against judges in this context.

herself and several fellow officers involved a matter of public concern. In that case, the plaintiff complained about multiple instances of inappropriate conduct directed towards her, as well as complaints of inappropriate conduct directed towards other females. *Montone*, 709 F.3d at 194. The Third Circuit found the plaintiff's speech met the public concern threshold because the allegations concerned a police officer exercising authority on behalf of the public and the alleged misconduct concerned women other than the defendant. *Id.* at 193-95. In other words, the Third Circuit found that because the conduct complained-of by the plaintiff was pervasive — such that it also affected other employees — the public concern test was met. Here, Plaintiff does not allege that the discrimination he has allegedly suffered was felt by any other judges or employees of the state court. Therefore, the allegations asserted in the Complaint are purely personal, and do not touch upon matters of public concern. *See, e.g., Bell v. City of Philadelphia*, 275 Fed. Appx. 157 (3d Cir. 2008)("Bell's complaints — which sought not to expose discriminatory or harassing practices or policies at the DA's Office, but complained solely about his own 'abuse' and mistreatment by superiors and co-workers — were not a matter of public concern . . . ."); *Middleton v. Deblasis*, 844 F. Supp. 2d 556, 563-65 (E.D. Pa. 2011)(finding that it was not a public concern when a police officer brought a retaliation claim against

her city employer after making allegations of racial and sexual discrimination by her supervisors, because "plaintiff complains solely about her own abuse and mistreatment by superiors, which is not a matter of public concern."); *Miles v. City of Phila.*, No. 11-4040, 2011 U.S. Dist. LEXIS 107499, at *4 (E.D. Pa. Sept. 21, 2011) (holding that plaintiff did not speak on a matter of public concern because "as pled, her allegations [did] not implicate defendants in a pattern of conduct directed at anyone other than her"); *McCartney v. Penn. State Police*, No. 09-1817, 2011 U.S. Dist. LEXIS 83409, at *31 (M.D. Pa. March 9, 2011)(holding that plaintiff must allege a "wider pattern of inappropriate conduct" in order for allegations to constitute speech on a matter of public concern), *report and recommendation adopted by* No. 09-1817, 2011 U.S. Dist. LEXIS 83438, (M.D. Pa. July 29, 2011); *Kuder v. City of Rochester*, 992 F. Supp. 2d 204, 210 (W.D.N.Y.)(finding that lacking any allegations of discrimination in the general sense, or on a widespread scale, plaintiff's complaints of disability discrimination were "confined to plaintiff's own, particularized personnel issues, and his belief that he, and he alone, was a victim of discrimination."); *Pedrosa v. City of New York*, 2014 U.S. Dist. LEXIS 3315 at *35 (S.D.N.Y. 2014) (where "each of the complaints lodged by Plaintiff . . . concerned only Plaintiff's own situation and did not hint at broader problems," plaintiff was not speaking on a matter of public concern, and to find otherwise

"would constitute an impermissible 'constitutionaliz[ation of] the employee grievance'" (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420(2006))); *Meekison v. Ohio Dep't of Rehab. & Corr.*, No. 09-113, 2013 U.S. Dist. LEXIS 67679, at *62 (S.D. Ohio May 13, 2013)(finding that the basis of plaintiff's discrimination lawsuit did not address a public concern when the allegations of the lawsuit only concerned her relationship with her employer and the basis for her own termination); *Holbrook v. City of Alpharetta, Ga.*, 112 F. 3d 1522, 1529-30 (9th Cir. 1997)(stating that a public employee's personal grievance complaints for discrimination based on his disability was not speech protected by the First Amendment).

Accordingly, Defendants' motion to dismiss Counts Three and Four is granted. Those counts are dismissed without prejudice.


## II.  Motion to Strike

Defendants also move to strike the portions of the Complaint that relate to allegations regarding any events that occurred after the initiation of this lawsuit, on the basis that Plaintiff did not seek leave to amend his Complaint pursuant to Fed. R. Civ. P. 15(d).  These include Counts Three and Four, and factual allegations that support those two Counts in paragraphs 10 and 36 through 45.  Because I have dismissed Counts Three and Four, it is appropriate to strike paragraphs 10 and 36-45 from the Complaint, as well.  Therefore, Defendants' motion to strike is granted.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** and Counts Three and Four of the Second Amended Complaint are dismissed without prejudice.[4] Correspondingly, Defendants' motion to strike is **GRANTED**; paragraphs 10 and 36 through 45 of the Second Amended Complaint are stricken.


DATED:  January 25, 2018                    /s/Freda L. Wolfson
                                            Freda L. Wolfson
                                            U.S. District Judge

---

[4]     Plaintiff argues that a dismissal of Counts Three and Four is premature without the benefit of discovery.  However, the Court has found that, taking all of Plaintiff's allegations as true, they do not state a claim under the Petition Clause as a matter of law, and as such, whether discovery has commenced is beside the point.    But, should discovery reveal evidence to support Plaintiff's First Amendment claims under the Petition Clause, he may file a motion to amend at that time.